IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHARLES HILL, #R58880** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 14-cv-00778-JPG |
| | ) |
| **MICHAEL P. ATCHISON,** | ) |
| **JOSHUA SCHOEBECK,** | ) |
| **TIMOTHY VEATH, and R. COWAN,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Charles Hill, an inmate currently incarcerated at Menard Correctional Center ("Menard"), brings this *pro se* civil rights action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.

The complaint comes now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross

"the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

The following facts are relevant to the Court's threshold review: On September 15, 2012, Lieutenant Hughes conducted a routine shakedown of the "west house/front street workers" housing unit of Menard, where Plaintiff was housed. (Doc. 1, p. 3). During the shakedown, Lt. Hughes found a handwritten letter on Plaintiff's person, which contained multiple references to the Latin Folks Family, a security-threat group. *Id*. at 3. Plaintiff was handcuffed and immediately taken to temporary confinement, although Plaintiff adamantly denied ownership of the letter.

Defendant Schoebeck, an officer from internal affairs, was assigned to investigate the incident. *Id*. On September 27, 2012, Schoebeck issued Plaintiff a disciplinary report alleging that Plaintiff had engaged in security threat group activity in violation of Illinois Administrative Code Title 20 Section 504.205. *Id*. at 14. The report stated, "Offender Hill is a known member of the Maniac Latin Disciples (MLD), known affiliates of the Latin Folk Family. The letter made references to 'membership' of the Latin Folks and the 'I' staff which is the leadership of

the Latin Folks at the institutional level here at Menard." *Id*. When Plaintiff received the disciplinary report, he noticed that no hearing investigator had signed off on the report, as required by Illinois Department of Corrections ("IDOC") Rule 504.30.[1] *Id*. at 4. Further, Plaintiff asserts that Defendant Schoeback had not conducted a thorough "investigation" into the charges, but rather relied solely on Lt. Hughes' report.

On October 1, 2012, Plaintiff appeared before the adjustment committee and pled "not guilty" to the charges. *Id*. at 5. Plaintiff alleges that Defendant Veath, chair of the adjustment committee, threatened Plaintiff that if he did not reveal who gave him the letter, Defendant Veath would find Plaintiff guilty of the charged offense. Plaintiff responded that he did not know the name of the person who gave him the letter and requested additional time to provide evidence and witnesses in support of his defense. *Id*. at 5-6. Specifically, Plaintiff requested that he be allowed to take a handwriting test to prove that the letter was not his. *Id*. at 6. In his defense, Plaintiff stated, "I was a worker and I was just passing a letter for the guy. I didn't know what the letter said." *Id*.

On October 9, 2012, Plaintiff received the adjustment committee's final judgment, which found him guilty and recommended punishment in the form of 1-year C-grade status; 1-year segregation; 1-year commissary restriction; and a 6-month restriction on visits. *Id*. at 7. The committee based its decision on Lt. Hughes' report and the fact that Plaintiff "is a known member of the Maniac Latin Disciples, known affiliates of the Latin Folk Family." *Id*. at 15. Plaintiff asserts that prior to this incident he had never received any kind of gang-related disciplinary ticket nor had he been involved with the Latin Folk Family over the past seven years. *Id*. Plaintiff further maintains that he has received only one disciplinary ticket in seven

---

[1] Defendant Cowan's signature was later added to the report. However, Plaintiff maintains, and the Administrative Review Board's subsequent decision to expunge the incident from Plaintiff's record seems to acknowledge, that this signature was originally missing.

years. *Id*. Defendant Atchison, Chief Administrative Officer at the time, signed off on the decision. *Id*.

Plaintiff filed a grievance arguing that his due process rights had been violated when he was issued a disciplinary report without the benefit of a hearing investigator reviewing and conducting an investigation into the incident. *Id*. Without an independent review, Plaintiff grieved, he was denied a fair hearing. Further, Plaintiff asserted that he was denied a fair hearing when he was not allowed to review the letter that was the basis of the disciplinary report. Plaintiff's initial grievance was denied. However, on January 10, 2014, the Administrative Review Board ("ARB") issued a letter recommending that the disciplinary report be expunged from Plaintiff's masterfile due to non-compliance with IDOC Rule 504.30: "Preparation of Disciplinary Reports." *Id*. at 17. On March 27, 2014, the adjustment committee issued a final summary report expunging the disciplinary report from Plaintiff's record. *Id*. at 20. This decision came six months after Plaintiff completed his year in segregation. Plaintiff maintains that he suffered "atypical and significant" hardships while in segregation, including a loss of 20 pounds due to restrictions placed on his commissary privileges, loss of exercise privileges, lost wages, and restrictions on his contact with family. Moreover, while in segregation, Plaintiff was forced to share a 7 x 12 foot cell—a cell that was originally designed to house only one inmate— with another inmate. *Id*. at 9. Plaintiff's complaint contains a request for compensatory and punitive damages.

## Analysis

Accepting Plaintiff's allegations as true, as the Court must do at this preliminary stage, the Court finds that the complaint sets forth an actionable due process claim (Count 1). Plaintiff

may proceed on his claim for damages against Defendants Atchison, Schoebeck, Veath, and Cowan, but only in their individual capacities.

Inmates, generally, have a limited liberty interest in avoiding segregation. *See Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). However, while not every deprivation of a protected interest triggers due process protections, the Seventh Circuit has noted that "a liberty interest may arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." *Marion v. Columbia Correction Inst.,* 559 F.3d at 697-98 (7th Cir. 2009) (collecting cases).

Here, following the disciplinary hearing, the Board sentenced Plaintiff to a one-year term in disciplinary segregation. In addition to the lengthy duration of segregated confinement, Plaintiff alleges that the conditions of his confinement were "atypical and significant." The question is whether the duration and/or conditions of his confinement were sufficiently harsh to trigger due process protections. With regard to the duration of confinement, in *Marion*, the Seventh Circuit concluded that a term of 240 days of segregation *may* implicate liberty interests and remanded the case for further scrutiny of the actual conditions of confinement. *Id*. at 698-99. *Marion* further noted, "Our decision that Mr. Marion's complaint states a claim is consistent with the decisions of our sister circuits. Indeed, other courts of appeals have held that periods of confinement that approach or exceed one year may trigger a cognizable liberty interest without any reference to conditions." *Id.* In *Hardaway*, the Seventh Circuit refined its analysis of whether a lengthy term of segregated confinement can ever be enough – on its own – to trigger due process protection. *Hardaway*, 734 F.3d at 743. Similar to the present case, the inmate in *Hardaway* served six months of segregation for a disciplinary violation that was later expunged from his record. The Seventh Circuit noted, "Since Hardaway's confinement was six months and

one day in total, *the duration of segregation alone* is insufficient to rise to the level of a Fourteenth Amendment violation." *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (emphasis added). Taken together, *Marion* and *Hardaway* suggest that the duration of confinement, without regards to the conditions of confinement, may be enough to implicate a liberty interest if particularly substantial. At the very least, a year in segregation coupled with an allegation of particularly harsh conditions merits further scrutiny into the specific facts of Plaintiff's confinement to determine whether the Board's disciplinary action implicated a protected liberty interest.

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

In the present case, Plaintiff claims that Defendants denied him due process of law when they 1) failed to follow IDOC's own procedures, which required the appointment of a Hearing Investigator prior to the referral of any disciplinary infraction to the adjustment committee and 2) refused to allow Plaintiff the opportunity to inspect the letter, which was the only evidence used against him. IDOC has already concluded that the charge should be expunged from Plaintiff's record on the grounds that the disciplinary report did not comply with IDOC Rule 504.30, which outlines the proper procedures for disciplinary reports and hearing. Additional facts are required to determine whether this amounted to a violation of Plaintiff's due process rights under the

Fourteenth Amendment. In addition, the second allegation, that the hearing officers refused Plaintiff the opportunity to review the evidence used against him, may have also constituted a violation of Plaintiff's due process rights. Even under *Wolff*, "prisoners [do not have] the unfettered right to any witness or present any evidence they wish," but they are "entitled to have exculpatory evidence disclosed unless its disclosure would unduly threaten institutional concerns." *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002). At this point, more information is needed to determine whether the refusal to allow Plaintiff to inspect the letter constituted a violation of his due process rights, and whether there were any institutional concerns that would justify withholding this evidence. Therefore, dismissal of Plaintiff's due process claims against Defendants Atchison, Schoebeck, Veath, and Cowan would be inappropriate at this stage. Having plead facts sufficient to support a claim that each Defendant was personally involved in the deprivation, Plaintiff may proceed on this claim against Defendants Atchison, Schoebeck, Veath, and Cowan in their individual capacities only.

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 3) remains pending and shall be referred to United States Magistrate Judge Philip M. Frazier and addressed in a separate order.

**Disposition**

**IT IS HEREBY ORDERED** that Plaintiff's claim for damages against Defendants **ATCHISON, SCHOEBECK**, **VEATH**, and **COWAN** on **COUNT 1** shall proceed.

The Clerk of Court shall prepare for Defendants **ATCHISON, SCHOEBECK**, **VEATH**, and **COWAN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of

employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Frazier for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge

Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even if his application to proceed *in forma pauperis* is granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 8, 2014**

*s/ J. Phil Gilbert*
United States District Judge