IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-CV-0778-NJR-RJD |
| | ) |
| MICHAEL P. ATCHISON, JOSHUA SCHOENBECK, TIMOTHY VEATH, and REBECCA COWAN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Charles Hill is an inmate at Menard Correctional Center ("Menard"), a maximum security facility in the Illinois Department of Corrections ("IDOC") prison system. In September 2012, a Menard official issued Hill a disciplinary report for possessing a note (referred to as a "kite" in prison parlance) that discussed prison "security threat group" (gang) activity. On October 1, 2012, the Menard Adjustment Committee held a hearing on Hill's disciplinary charge. Hill was found guilty, and he received one year in disciplinary segregation as punishment.

On July 9, 2014, Hill filed this lawsuit pursuant to 42 U.S.C. § 1983 asserting that various officials at Menard violated his due process rights when he was subjected to the disciplinary action. Hill initially filed suit *pro se*, but counsel was later recruited to represent him. On July 29, 2016, Defendants filed a Motion for Summary Judgment (Docs. 66). On August 1, 2016, Hill filed a Motion for Partial Summary Judgment (Doc. 73). Hill also filed a Motion for Oral Argument (Doc. 83). All motions have been fully briefed.

For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment (Doc. 66), denies Hill's Motion for Partial Summary Judgment (Doc. 73), and denies Hill's Motion for Oral Argument (Doc. 83).[1]

## FACTUAL BACKGROUND

Hill has been in IDOC custody since 2007 (Doc. 67-1, pp. 2-3). On September 25, 2012, Hill and three other inmate workers were picking up laundry in the Menard "Front Street" area (Doc. 67-1, p. 3). While they were working, a Menard official named Lt. Hughes conducted a shakedown of the west house/front street workers housing unit (Doc. 67-1, p. 3; Doc. 73, p. 3). In conducting the shakedown, Lt. Hughes discovered and confiscated a note that was in Hill's pocket (Doc. 67-1, p. 4). Hill testified at his deposition that he had never actually read the contents of the note, but that he was just passing it along for another inmate in his gallery (*Id*). Hill testified that inmate workers frequently pass notes between other prisoners (*Id*). Hill admitted, however, that passing notes was prohibited under prison rules (*Id*).

Defendant Joshua Schoenbeck, an internal affairs officer, investigated the incident, which included reviewing the letter, interviewing Hill, and interviewing Juan Blanco, another inmate at Menard who was housed at the time in the cell corresponding to the number written on the letter (Doc. 73, p. 4; Doc. 74).

Menard officials later determined that the note referenced "security threat group" (gang) activity (Doc. 67-1, p. 4). On September 27, 2012, Hill was issued a disciplinary report for possessing the note (Doc. 67-2, p. 1).[2] The disciplinary report stated that "Offender Hill is

---

[1] The Clerk's Office is **DIRECTED** to update the docket sheet to reflect the true and accurate names of the following defendants: "R. Cowan" should be "Rebecca Cowen," and "Joshua Schoebeck" should be "Joshua Schoenbeck."

[2] The disciplinary report was drafted by Defendant Schoenbeck. The report specifically states:
  Offense(s): DR 504: 205-Security Threat Group or Unauthorized Organizational Activity

a known member of the Maniac Latin Disciples (MLD), known affiliates of the Latin Folk Family." (*Id*). The report goes on to mention that the confiscated letter "made references to 'membership' of the Latin Folk Family and the 'I' staff which is the leadership of the Latin Folks at the Institutional level here at Menard." (*Id*).

The report was signed by Defendant Schoenbeck, shift supervisor Major Kees, and reviewing officer D. Lyorla (*Id*). At the bottom of the report there is also a signature line for the "Hearing Investigator." (*Id*). When the disciplinary report was first provided to Hill (in the form of a carbon copy), the hearing investigator line was blank (*Id*). However, sometime after the carbon copy was removed from the original, Defendant Rebecca Cowan placed her signature on the original disciplinary report on the hearing investigator line (Doc. 1, p. 14). Because the carbon copy and original disciplinary report were no longer attached, Defendant Cowan's signature was, of course, not on the carbon copy.

On October 1, 2012, a disciplinary hearing took place before the Adjustment Committee. The Adjustment Committee was comprised of Menard officials Defendant Timothy Veath and Anthony Wells (Doc. 1, p. 15). Hill told the members of the Adjustment Committee that he did not write the confiscated note, he had never read the note, and he was merely passing it along for someone else (Doc. 67-1, p. 5). One of the members of the Adjustment Committee then responded, "Tell us where it came from or where you were taking it, or do the time for it." (*Id*). Hill declined to identify the inmate who had given him

---

Observation: … On the above date and approximate time following an investigation conducted by the Menard Intelligence Unit offender HILL, CHARLES R58880 is being issued this disciplinary report after a Security Threat Group (STG) letter was discovered during a routine search of offender Hill's person on September 25, 2012 by Lt. Hughes. The letter was hand written and made several references to the Latin Folk STG. Offender Hill is a known member of the Maniac Latin Disciples (MLD), known affiliates of the Latin Folk Family. The letter made references to "Membership" of the Latin Folks and the "I" staff which is the leadership of the Latin Folks at the institutional level here at Menard. Offender HILL, CHARLES R58880 was identified by Identification Card and Institutional Graphics. End of Report.

(Doc. 67-2, p. 1).

the note (Doc. 1, p. 15). During the hearing, Hill was not given an opportunity to read the note (Doc. 67-1, p. 4). Hill was allowed to see the note during his deposition for this case, however, which occurred years later (on July 27, 2015) (*Id*). Hill testified at his deposition that this was the first time that he had actually read the note (*Id*).

Defendant Veath (now retired from Menard) testified at his deposition that inmates were not typically allowed to review confiscated gang-related documents at disciplinary hearings due to security concerns (Doc. 67-10, p. 7). Defendant Veath also testified that, when disciplinary hearings involved gang-related matters, he generally would rely on the investigations conducted by the Internal Affairs office (*Id*). Defendant Veath stated that he did not specifically remember Hill's Adjustment Committee disciplinary hearing, but he indicated that he would have likely reached a ruling without having read the confiscated note (*Id*).

Following the hearing, the Adjustment Committee found Hill guilty of "Gang or Unauthorized Organization Activity" (Doc. 67-3, p. 1). The Adjustment Committee recommended that Hill be punished with one year of "C Grade," one year of disciplinary segregation, a one year commissary restriction, and a six-month restriction on contact visits (*Id*). Defendant Michael Atchison, the warden of Menard at that time, approved the disciplinary recommendation, and Hill spent the next twelve months in segregation. (*Id*).

Shortly after arriving in the segregation unit, Hill filed a grievance protesting the disciplinary report and hearing (Doc. 1, p. 16). When Hill initially received the carbon copy of the disciplinary report, there was no signature on the "hearing investigator" line. Hill argued in his grievance that the lack of a signature reflects that the disciplinary charge was not properly investigated (*Id*). Hill also argued in his grievance that he should have been

afforded an opportunity to read the letter during his disciplinary hearing. On January 30, 2013, Warden Harrington, who became the warden of Menard after Defendant Atchison, denied Hill's grievance (Doc. 1, p. 19).

On February 13, 2013, Hill appealed the denial to the IDOC Administrative Review Board ("ARB") in Springfield (Doc. 1, p. 17). On January 15, 2014, almost one year later, the ARB issued a decision to expunge the disciplinary report (*Id*). The ARB noted that Hill's disciplinary report failed to comply with IDOC rules, presumably due to the lack of the hearing investigator's signature (*Id*). At this point, Hill had already served the full twelve months in segregation, and so the expungement had little effect.

On July 9, 2014, approximately six months after receiving the ARB expungement letter, Hill filed this lawsuit. Hill asserts in his complaint that Defendants Atchison, Schoenbeck, Veath, and Cowen mishandled his disciplinary proceedings, thereby violating his due process rights. On August 8, 2014, District Judge J. Phil Gilbert screened Hill's complaint pursuant to 28 U.S.C. § 1915A. Judge Gilbert determined in the screening order that Hill asserted a colorable denial of due process claim against all four defendants. On September 14, 2015, Magistrate Judge Philip M. Frazier (who has since retired) recruited counsel on behalf of Hill. The case was subsequently transferred to the undersigned District Judge and Magistrate Judge Reona J. Daly.

## LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When presented with a motion for summary judgment, the Court must view the record in a

light most favorable to the nonmoving party and draw all reasonable inferences in his or her favor. *Carson v. ALL Erection & Crane Rental Corp.*, 811 F.3d 993, 995 (7th Cir. 2016). At this stage of the litigation, "the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Here, both sides have filed motions for summary judgment. When presented with cross motions for summary judgment "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2720 (4th ed.). When filing cross motions for summary judgment, the parties do not waive the right to a trial. *Mkt. St. Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 590 (7th Cir. 1991).

## ANALYSIS

**I.   Motion for Summary Judgment filed by Defendants Atchison, Schoenbeck, Veath, and Cowan (Doc. 66)**

Defendants argue that they are entitled to summary judgment because Hill's period in disciplinary segregation was not an "atypical and significant hardship" that would trigger due process protections, and even if it was, Hill was afforded all of the due process that was required. Defendants also argue that they are entitled to qualified immunity.

Although an inmate's constitutional rights are limited due to incarceration, "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for

crime." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). Pursuant to the Fourteenth Amendment, prisoners maintain certain liberty interests.[3] The Fourteenth Amendment states in part, "No State shall … deprive any person of life, liberty, or property, without due process of law[.]" If a prisoner is to be deprived of a liberty interest, that prisoner is entitled to specific due process protections. *See Marion v. Radtke*, 641 F.3d 874, 876 (7th Cir. 2011) ("The due process clause requires hearings when a prisoner loses more liberty than what was taken away by the conviction and original sentence"). Thus, "[a] prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)).

A prisoner's due process liberty interest is typically triggered in two types of scenarios: when a prisoner loses good time credits (thereby lengthening the overall period of incarceration), *see Wolff*, 418 U.S. at 554, or when prison officials impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The "atypical and significant hardship" liberty interest often arises when an inmate is placed in disciplinary segregation for an extended period of time. *See, e.g., Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009).

In order to determine whether prison conditions constitute an "atypical and significant hardship" that would trigger due process protections, the Court "must take into consideration all of the circumstances of a prisoner's confinement[.]" *Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015) (*quoting Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 699 (7th Cir.

---

[3] Prisoners in state or local custody are entitled to due process protections pursuant to the Fourteenth Amendment. For prisoners in federal custody, such a right exists under the Fifth Amendment. *Crowder v. True*, 74 F.3d 812, 814 (7th Cir. 1996).

2009). Federal courts have not adopted clear, bright line standards for making this determination, but the consensus in the Seventh Circuit appears to be that being placed in segregation for several months or more will implicate a liberty interest. *See Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015) ("A considerably shorter period of segregation [less than six months] may, depending on the conditions of confinement and on any additional punishments, establish a [due process] violation[.]"); *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 699 (7th Cir. 2009) (240 day period in segregation may implicate a liberty interest).

Here, Hill's twelve month period in the Menard disciplinary segregation unit is of a sufficient duration and severity to implicate a liberty interest. Hill testified at his deposition that he spent little time outside of his cell during this period, and the conditions were much more strict than those in general population (Doc. 67-1, p. 9). When viewed as a whole, the Court finds that the conditions of his confinement constituted an "atypical and significant hardship" giving rise to a liberty interest.

Thus, the Court must decide whether Hill was afforded proper due process. The Supreme Court noted in *Wolff v. McDonnell* that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). When prison officials seek to revoke an inmate's good time credits, the inmate is entitled to due process consisting of (1) advanced written notice of the disciplinary charges; (2) the opportunity to be heard before an impartial decision maker; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (4) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563–567. Additionally, the

decision of the prison disciplinary committee must be supported by "some evidence." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).

When an inmate's due process interest is triggered due to an "atypical and significant hardship" (and not an actual loss of freedom, such as through the revocation of good time credits), the Supreme Court held in *Wilkinson v. Austin*, 545 U.S. 209, 228 (2005), that the inmate is entitled to less due process than the above standard set forth in *Wolff*. In *Wilkinson*, the plaintiff alleged that his due process rights were violated during the transfer process to a "supermax" type facility within the Ohio state prison system. In finding that Ohio's prison procedures did not violate the plaintiff's due process rights, the Supreme Court noted:

> Ohio is not, for example, attempting to remove an inmate from free society for a specific parole violation, see, *e.g., Morrissey*, 408 U.S., at 481, 92 S.Ct. 2593, or to revoke good-time credits for specific, serious misbehavior, see, *e.g., Wolff*, 418 U.S., at 539, 94 S.Ct. 2963, where more formal, adversary-type procedures might be useful. Where the inquiry draws more on the experience of prison administrators, and where the State's interest implicates the safety of other inmates and prison personnel, the informal, nonadversary procedures set forth in *Greenholtz*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668, and *Hewitt v. Helms*, *supra*, 103 S.Ct. 864, 74 L.Ed.2d 675, provide the appropriate model.

*Id*. at 228–29.

In *Greenholtz* and *Hewitt* the Supreme Court held that due process was satisfied by "informal" type procedures where the inmate was given notice of the charge or potential adverse decision along with an opportunity to present his views. *Greenholtz*, 442 U.S. at 16 (prisoner alleged he was denied due process by parole board); *Hewitt*, 459 U.S. at 476 (prisoner alleged he was denied due process when transferred to administrative segregation).

Defendants argue that Hill was provided all of the due process that was required under the *Wolff* standard. As indicated above, the Supreme Court's holding in *Wilkinson*

suggests that placement in a segregation unit requires less due process than the standard set forth in *Wolff*. Even under the more stringent *Wolff* standard, which both parties rely on in making their arguments, however, Defendants are entitled to summary judgment.

Hill received notice of the charges against him on September 27, 2012. Four days later, on October 1, 2012, the hearing with the Adjustment Committee took place. On October 10, 2012, Hill received written notice of the Adjustment Committee decision, which explained the evidence relied on and the reason for the disciplinary action.

Hill argues that he was not provided adequate due process because: (1) Adjustment Committee chairman Defendant Veath was not an impartial decision maker because he never actually read the confiscated note, (2) Hill was denied the opportunity to present evidence in his defense because Hill was not allowed to read the note, and (3) Hill was denied the right to a hearing officer under Department Rule 504.

The Supreme Court held that pursuant to *Wolff*, an inmate must be afforded "an opportunity, *when consistent with institutional safety and correctional goals*, to call witnesses and present documentary evidence in his defense[.]" *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (emphasis added). Because the confiscated note referenced gang matters, Defendant Veath testified at his deposition that there was an institutional safety risk in allowing Hill to read it. Although it appears that Defendant Veath primarily relied on the existing disciplinary report and did not read the confiscated note himself, this was not improper under the circumstances. Defendant Veath stated at his deposition that he would often rely on the investigative work of the Menard Internal Affairs office when addressing gang related matters. Here, the confiscated note makes cryptic references to gang activity that may not be obvious to a lay person. While the evidentiary

practices implemented by the Adjustment Committee are not on par with those used in criminal proceedings, the Court finds that they did not violate Hill's due process rights.

Also, the disciplinary report was compiled by those who had read the note, and Hill was given an opportunity to explain himself. When Hill stated that he was merely passing the note along for someone else, the Adjustment Committee told him that the charges would be dropped if he identified that individual. Hill declined to do so.

Hill also argues that Defendants' failure to comply with IDOC policy resulted in the denial of due process. However, such rules or policies do not enlarge or diminish an inmate's rights under the Constitution. *See Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) ("the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established"). Hill's primary dispute (and presumably the reason the disciplinary report was expunged) is that his disciplinary report was not signed by the hearing investigator. Despite the lack of signature, Hill's own testimony reflects that prison officials did conduct an investigation. Hill stated at his deposition that he was interviewed by someone from the Menard Internal Affairs office prior to the disciplinary hearing. Any lack of signature by the hearing investigator was therefore a failure to comply with a mere formality.

When viewed as a whole, no reasonable jury could find that Hill was denied adequate due process. He was provided with all of the due process required under *Wolff*. Accordingly, the Court grants Defendants' Motion for Summary Judgment (Doc. 66).

I.   **Motion for Partial Summary Judgment filed by Hill (Doc. 73)**

Hill also filed a Motion for Partial Summary Judgment (Doc. 73), seeking summary judgment against all defendants on his procedural due process claim only. The Court finds

that the evidence presented by Hill is insufficient to find that a procedural due process violation occurred. Accordingly, Hill's Motion for Partial Summary Judgment (Doc. 73) is denied.

## II.     Motion for Oral Argument filed by Hill (Doc. 83)

In this motion, Hill points out that Defendants' Motion for Summary Judgment references the "IDOC Rule 504 Training Manual," but Defendants never produced the document during discovery. Hill therefore requests that the document be excluded from the record pursuant to Rule 37(c)(1) as a discovery sanction. Hill also requests oral argument on this issue. Defense counsel's handling of the matter (and defense counsel's cavalier response to Hill's motion, *see* Doc. 81, p. 2) is disappointing, but ultimately the training manual would not have affected the outcome of this case, regardless of whether or not it is considered. As previously noted, the failure to comply with state law is not conclusive as to whether an inmate's constitutional rights were violated. Accordingly, Hill's Motion for Hearing (Doc. 83) is denied.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment (Doc. 66) filed by Defendants Atchison, Cowan, Schoenbeck, and Veath, **DENIES** the Motion for Partial Summary Judgment (Doc. 73) filed by Hill, and **DENIES** the Motion for Oral Argument (Doc. 83) filed by Hill. As no further claims remain, this case is **CLOSED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

   **IT IS SO ORDERED.**

   DATED:   March 30, 2017

                                                                          *Nancy J. Rosenstengel*
                                                           _____
                                                           **NANCY J. ROSENSTENGEL**
                                                           **United States District Judge**